## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SAFETY RESEARCH & STRATEGIES, INC.** ) | |
| 340 Anawan Street ) | |
| Rehoboth, MA 02769 ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. |
| ) | |
| **U.S. DEPARTMENT OF TRANSPORTATION** ) | |
| 400 Seventh Street, S.W. ) | |
| Washington, DC 20590 ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## COMPLAINT FOR INJUNCTIVE RELIEF

1.  This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for injunctive and other appropriate relief and seeking the disclosure and release of agency records improperly withheld from plaintiff by defendant U.S. Department of Transportation and its component, the National Highway Traffic Safety Administration.

### Jurisdiction and Venue

2.  This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B).  This court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.  Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

### Parties

3.  Plaintiff Safety Research & Strategies, Inc. ("SRS") is a Massachusetts company specializing in motor vehicle and product safety research, investigation and advocacy.  SRS's clients include attorneys, engineering firms, supplier companies, media, and government.  SRS works with organizations and entities interested in improving vehicle and product safety.  The company's advocacy mission includes the publication of special reports, articles and

investigations and submissions to safety agencies and policymakers on matters of public interest.

Much of SRS's advocacy work is performed on a *pro bono* basis.

4.   Defendant U.S. Department of Transportation ("DOT") is a Department of the

Executive Branch of the United States Government and includes as a component the National

Highway Traffic Safety Administration ("NHTSA").   DOT is an agency within the meaning of 5

U.S.C. § 552(f).

### The TREAD Act and its Early Warning Reporting ("EWR") Requirements

5.   The Transportation Recall Enhancement, Accountability, and Documentation

("TREAD") Act, Pub. L. 106-414, was passed by the Congress in 2000.   Enactment of the

legislation followed revelations that motor vehicle and tire manufacturers possessed important

information that might have been useful in the early identification of potential safety defects.

6.   Under NHTSA's regulations implementing the TREAD Act, motor vehicle, child

safety seat and tire manufacturers and importers are required to submit to the agency detailed

Early Warning Reporting ("EWR") data about production numbers, external communications to

vehicle and equipment owners regarding defects, foreign recalls, numbers of consumer

complaints, field reports, warranty and property damage claims, and deaths and injury notices

and claims.   All of the EWR information NHTSA receives is stored in a database called

ARTEMIS (which stands for Advanced Retrieval, Tire, Equipment, and Motor Vehicle

Information System).   Manufacturers are required to report these data to NHTSA on a quarterly

basis.

7.   NHTSA underscored the important role EWR data plays in its investigative processes

in a 2012 Preliminary Regulatory Evaluation on a proposed amendment to the EWR rule:

> Though benefits in terms of lives saved and injuries prevented are nearly
> impossible to quantify, the agency believes that EWR data possess valuable

predictive and monitoring information that may assist in the identification of potential safety-related defects in motor vehicles and motor vehicle equipment.[1]

NHTSA further stated:

> Since 2004, EWR data have played a role in the opening of 150 Preliminary Evaluations (PEs). Among those 150 PEs, 31 PEs have been opened based on EWR data, with the remaining 119 PEs supported—but not initiated—by EWR data.[2]

In an undated document entitled *Public Release of EWR Data*, the agency stated:

> As of October 1, 2011, NHTSA has used the EWR data in 225 investigations; 68 were launched because of EWR data alone; 157 were prompted by other information but supported by the EWR data.

8. The accuracy and completeness of the information manufacturers and importers submit to NHTSA each quarter via EWR is critical to ensuring the early warning system's robust function and use as an investigative tool. Congress clearly understood this, girding these reporting requirements with tough sanctions for non-compliance. Under the TREAD Act, the failure of a manufacturer or importer to fulfill its reporting obligations can trigger serious civil penalties of up to $15 million and a criminal penalty of up to 15 years imprisonment.

## Plaintiff's Submission to NHTSA Concerning Certain EWR Matters

9. By e-mail dated March 25, 2013, plaintiff provided to NHTSA a memorandum titled, "EWR Submissions." The purpose of the memorandum, according to plaintiff, was "to inform [NHTSA] of what appear to be non-reporting issues associated with two incidents involving products manufactured and distributed by two different entities." The memorandum further stated, "Specifically, we have become aware of two incidents that appear to meet all of the EWR

---

[1] Docket 2008-0169; Preliminary Regulatory Evaluation; Early Warning Reporting, Foreign Defect Reporting, and Motor Vehicle and Equipment Recall Regulations; NHTSA Office of Regulatory Analysis and Evaluation National Center for Statistics and Analysis; August 2012.

[2] *Id.*

3

reporting requirements but do not appear to have been reported by any of the associated entities."

In the memorandum, plaintiff provided specific information concerning a crash that occurred on

April 17, 2009, involving a tire tread separation which resulted in an occupant sustaining a

serious closed head injury, and a crash that occurred on June 14, 2010, involving the apparent

failure of Harmony Lite Rider child restraint seats in a crash, which caused permanent and severe

injuries to two young children. The manufacturers learned of these events via civil lawsuits.

10. In the memorandum it provided to NHTSA on March 25, 2013, plaintiff asked the

agency to "[p]lease let us know if these incidents should in fact have been reported under EWR,

and if so what actions the agency plans to take."

### Plaintiff's FOIA Request and NHTSA's Response

11. By letter to NHTSA dated May 28, 2013, plaintiff submitted a FOIA request seeking

agency records relating to the matters identified in the memorandum it had previously sent to the

agency and described in ¶ 7, *supra*. Plaintiff attached the memorandum to its letter, and

requested the following records:

> [W]e are requesting copies of materials associated with any activities related to
> our request. These include, but are not limited to, e-mails, paper correspondence,
> or call logs representing communication between NHTSA employees addressing
> our memo and/or the incidents we described. They also include e-mails, paper
> correspondence, or call logs representing communication between NHTSA and
> the manufacturers associated with the two incidents we described.
>
> Furthermore, we are requesting information related to any policies, processes,
> practices and/or guidelines regarding NHTSA's monitoring of EWR claims that
> meet EWR reporting requirements. We are also requesting, specifically, whether
> the agency determined these claims met EWR reporting requirements and if yes,
> what actions NHTSA intends to take.

12. By letter to plaintiff dated July 9, 2013, NHTSA responded to plaintiff's FOIA

request. NHTSA provided to plaintiff one record: a draft document titled, "Early Warning

Reporting (EWR) Data Analysis Plan," dated December 2008.  NHTSA advised plaintiff of its right to appeal the agency's response to plaintiff's FOIA request.

13.  By letter to NHTSA's Chief Counsel dated August 5, 2013, plaintiff appealed the agency's response to its FOIA request.  Plaintiff stated, *inter alia*, that the sole record disclosed by the agency – the "Early Warning Reporting (EWR) Data Analysis Plan" – was not responsive to plaintiff's FOIA request.  Plaintiff further stated that the agency's response "does not include the requested communications and documentation associated with the two specific instances [plaintiff] cited [in its memorandum to NHTSA], " and that "it does not acknowledge the existence of this documentation nor does this explain if NHTSA determined that these specific events are reportable under the requirements of EWR and if so, what action NHTSA has taken or intends to take."

14.  By letter to plaintiff dated September 3, 2013, NHTSA's Chief Counsel responded to plaintiff's administrative appeal.  He stated, *inter alia*, that the agency's response for responsive records was adequate, notwithstanding the fact that only one record had been identified as responsive to plaintiff's request.  The Chief Counsel denied plaintiff's appeal and advised plaintiff of its right to seek review of the agency's final determination in this Court.

15.  Plaintiff has exhausted the applicable administrative remedies.

16.  Defendant DOT and its component, NHTSA, have wrongfully withheld the requested records from plaintiff.

## Requested Relief

WHEREFORE, plaintiff prays that this Court:

A.  order defendant DOT and its component, NHTSA, to disclose the requested records in their entirety and make copies available to plaintiff;

5

B.  provide for expeditious proceedings in this action;

C.  award plaintiff its costs and reasonable attorneys fees incurred in this action; and

D.  grant such other relief as the Court may deem just and proper.

Respectfully submitted,

DAVID L. SOBEL
D.C. Bar No. 360418

1818 N Street, N.W.
Suite 410
Washington, DC 20036
(202) 246-6180
sobel@att.net

Counsel for Plaintiff

6